UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHELITA TURNER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-1620 |
| | § | |
| GOODWILL INDUSTRIES OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Pending before the Court are the defendant's, Goodwill Industries of Houston ("Goodwill"), motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket Nos. 47, 48 and 49).[1] The plaintiffs, Shelita Turner, Jennifer Jacobs and Aya Tiacoh (collectively, the "plaintiffs") have responded (Docket No. 61) and the defendant has replied (Docket No. 70). Having reviewed the parties' submissions, the record, and the applicable law, the Court finds and concludes as follows.

## II.    FACTUAL BACKGROUND

Goodwill is a non-profit Texas corporation that provides educational programming, training, skills development, and work opportunities for persons with disabilities and other barriers to employment. Some of those programs are grant-based and depend on that funding for their operation. Goodwill considers such programs to be temporary because although the grant may be renewed, there is no guarantee that it will be. The two programs at issue in this action are

---

[1] Goodwill has also submitted a motion for summary judgment on the claims brought by Khalila Williams (Docket No. 46). Williams asserted discrimination and retaliation claims under 42 U.S.C. § 1981; she asserted no claims pursuant to Title VII or any other statute. *See* Docket No. 61 § A n.5. The Court dismissed Williams' section 1981 claims on March 15, 2013 (Docket No. 26), and formally terminated her from this action on July 1, 2014. As such, the motion for summary judgment as to Williams is moot.

the 2009 Summer Youth Program ("2009 SYP"), which was based on a temporal grant beginning May 1, 2009, and ending September 30, 2009, and the Aging Workers Initiative program ("AWI"), which was also grant-based.

Shelita Turner, Jennifer Jacobs, and Aya Tiacoh, all African-Americans, were employed by Goodwill from 2009 until 2010. In September 2009, Loyd Sigler, an African-American, became the Program Manager for the AWI and supervised the employees assigned to that program. In March 2010, Sigler became a Program Manager for another Goodwill initiative, and he was replaced by Sandra Berry, a Caucasian, who was hired to run the AWI. Before Berry was hired, all the AWI employees were African-American.

This lawsuit arises from the plaintiffs' tenure as Goodwill employees. They assert claims of discrimination, retaliation, and wrongful termination.

**A.      Shelita Turner**

Turner was hired in July 2009 as a Job Developer for the 2009 SYP. When that program ended in September 2009, she was rehired to work as an Employment Specialist in the AWI.

During her tenure at Goodwill, Turner had tardiness and attendance problems for which she was counseled on numerous occasions by Sigler and then Berry. Within weeks of Berry's arrival at Goodwill, Berry noted that Turner would frequently arrive late on Monday mornings and leave early on Friday afternoons. When Berry approached Turner about this issue, Turner stated that she was working in the field during those hours. Berry asked Turner to refrain from performing field work during these times, but Turner did not follow these instructions. As a result, Berry and Terry Seufert, Goodwill's Director of Program Services, convened a meeting with Turner on April 20, 2010, and instructed her to indicate on her calendar her whereabouts for

every hour of the workday and told her not to perform field work on Monday mornings and Friday afternoons.

On May 3, 2010, Berry had a discussion with Turner about her continued tardiness and failure to report her whereabouts. The discussion ended quickly with Turner slamming the door to Berry's office as she left. Berry informed Seufert of what happened at the meeting.

That same day, Turner contacted the Human Resources Manager, Phil Solis, and indicated that she wished to file a formal grievance against Berry. Solis sent Turner Goodwill's grievance policy which outlined the steps of how to file a grievance. Turner ignored the instructions and submitted her complaint directly to Solis shortly thereafter.

Turner continued to have attendance problems. She was absent from work on May 4, 5 and 13, and she was late for work on May 17.  On May 21, 2010, Seufert issued a written memorandum to Turner reprimanding her on her excessive absences. Turner was again tardy for work on May 22, 23, and 24. On the May 25, Solis and Seufert attempted to have a meeting with Turner regarding her tardiness, but Turner claimed that she had been instructed by her attorney to cease all communication with Solis and Seufert.

On May 26, 2010, Solis issued a written memorandum detailing his investigative findings regarding the grievance Turner filed against Berry. He concluded that Berry acted appropriately when she disciplined Turner and that Turner had not been unfairly treated by Berry or any other Workforce Development team member at Goodwill. That same day, Solis and Adrienne Webb, the Director of Human Services, met with Turner to inform her of the results of the investigation.

Near the end of May, Turner requested and received medical leave. On June 7, 2010, she was instructed to call Berry, Webb, or Solis on a daily basis to update Goodwill on when she

intended to return to work. Turner never contacted anyone as required and never reported to work.

After failing to call in or report to work for three days, Goodwill treated Turner as having abandoned her job. Goodwill policy states that not showing up for work or calling to explain the absence for three scheduled work days in succession is considered a resignation. Accordingly, on June 11, 2010, Solis notified Turner that her actions constituted a voluntary resignation and her employment with Goodwill was terminated effective immediately.

**B.      Jennifer Jacobs**

Jacobs was hired in September 2009 as a Trainer/Curriculum Developer in the AWI. After Berry was hired as the AWI Program Manager, she met with Jacobs on a regular basis to discuss deadlines for various tasks Jacobs was assigned. For example, on July 13, 2010, they met and determined that Jacobs would provide Berry with a draft of the "Yes You Can" curriculum by Friday, July 30, 2010. On July 15, Berry emailed Jacobs outlining their discussion, including the agreed upon deadline.

On July 30, Jacobs submitted a one-page outline of the curriculum rather than the curriculum itself. Berry informed Jacobs that this was unacceptable and that her performance needed to be rectified immediately, or further disciplinary action, including termination, would occur. She documented this discussion in a memorandum to Jacobs dated August 3, 2010, and went over the memo with Jacobs. Solis, the Human Resources Manager, was also present at the meeting. Jacobs did not sign acknowledging receipt of the memo, and instead drafted a written rebuttal in which she admitted missing the deadline, but attempted to explain the reasons she did not complete the project.

On August 9, 2010, Berry met with Jacobs to discuss the creation of the Instructor Guide ("Guide") for the Yes You Can project. She provided Jacobs with the required grant guidelines and format for the Guide. On August 13, Jacobs submitted a Guide that did not meet the grant guideline or formatting requirements. On August 17, Berry documented that Jacobs did not comply with her explicit instructions. She also outlined specific requirements for completing a comprehensive curriculum and admonished Jacobs that if her work product did not improve further disciplinary action, including termination, could occur. Berry and Solis went over this memorandum with Jacobs on August 19, 2010.

On August 27, Jacobs resubmitted the Guide for the Yes You Can project and again did not comply with Berry's explicit instructions. Finding this failure unacceptable, Berry documented these events in a memo dated September 10, 2010. Berry and Solis went over the memo with Jacobs and during that meeting terminated her employment with Goodwill due to poor performance.

### C.     Aya Tiacoh

Tiacoh was hired in December 2009 as an administrative assistant for the AWI. In actuality, Tiacoh acted as an administrative assistant for the AWI and another program. Each had funding for an assistant for twenty hours per week.

In August 2010, Berry informed Tiacoh that her hours were going to be reduced from forty hours per week to twenty hours per week. Her hourly wage remained the same and she continued to work in the AWI. Her hours were cut because the grant funding for the other program ended in August. Berry explained this to Tiacoh and memorialized their conversation in a written memorandum to her that same day.

Tiacoh submitted a letter of resignation to Goodwill on November 12, 2010. In that letter, she explained that her reduced hours made it difficult to meet her personal expenses. She also asserted that she was resigning, in part, because Berry constantly harassed and bullied her.

## III.   CONTENTIONS OF THE PARTIES

### A.   Goodwill's Contentions

Goodwill argues that none of the plaintiffs can make out a *prima facie* case of discrimination or retaliation. In regard to Turner and Jacobs, Goodwill argues that neither can establish the fourth element of their *prima facie* case of discrimination. As to Tiacoh, Goodwill contends that she suffered no adverse employment action, and even if she had, her discrimination claim suffers from the same deficiency as her co-plaintiffs. Goodwill also argues that the plaintiffs' retaliation claims fail because none of them can establish the third element of their *prima facie* case.

Goodwill also asserts that none of the plaintiffs can establish pretext. More specifically, it claims that no plaintiff can point to evidence that establishes that Goodwill's reason for terminating her employment is false or was motivated by race. Instead, it argues, the plaintiffs simply rely on baseless assertions in their attempt to establish pretext.

Finally, Goodwill contends that the plaintiffs' *Sabine Pilot* claims fail because no plaintiff was asked to perform an illegal act, and even if she had been asked to perform such an act and refused, that refusal was not the sole reason for her termination.

### B.   The Plaintiffs' Contentions

The plaintiffs argue that it is not necessary for them to demonstrate that they were replaced or treated less favorably than a similarly situated coworker to establish the fourth element of their *prima facie* case of discrimination. Rather, they claim that they can make out

their case with circumstantial evidence of discrimination. As to their retaliation claims, the plaintiffs assert that there are fact issues and credibility determinations regarding but for causation that must be made by the trier of fact, rendering summary judgment inappropriate.

They also argue that there is abundant evidence that Goodwill's proffered reason for each plaintiff's adverse employment action is pretextual. For example, they claim that Goodwill's reason for terminating each plaintiff was based on a subjective assessment. Additionally, they claim that over time, Goodwill has given inconsistent reasons for each termination decision. The plaintiffs also point to the temporal proximity between their protected conduct and adverse employment actions, and the fact that Goodwill violated its own policies with regard to the grievance filed by Turner.

Finally, the plaintiffs contend that their *Sabine Pilot* claims should go forward because there were a number of illegal acts they were instructed to perform and the jury should be free to decide whether their refusal to perform those acts formed the basis of each plaintiff's termination.

## IV.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). If the movant meets its burden, the burden then shifts to the nonmovant

to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (quoting *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)).

When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## V.     ANALYSIS AND DISCUSSION

The plaintiffs claim Goodwill discriminated and retaliated against them because of their race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. They also assert a state law claim for wrongful discharge under the *Sabine Pilot* exception. Although each federal statute provides an independent basis of liability, discrimination and retaliation claims under them are subject to the same analysis for summary judgment purposes. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n. 2 (5th Cir. 1999). Because the statutes are functionally identical for the purposes of the plaintiffs' claims, it is unnecessary to refer to both of them. Therefore, the Court will refer to their federal claims collectively as Title VII claims.

A.      **Discrimination**

Title VII forbids an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Employment discrimination under Title VII may be proven through either direct or circumstantial evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). The Fifth Circuit has held that in cases where no direct evidence[2] of discriminatory intent has been produced, proof by means of circumstantial evidence must be evaluated using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *see also Turner*, 476 F.3d at 345 (citing *Rutherford v. Harris Cnty.*, 197 F.3d 173, 179 – 80 (5th Cir. 1999)).

Utilizing the *McDonnell Douglas* burden-shifting framework, the Fifth Circuit has restated the test as follows:

> [A] plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (citations and internal quotation marks omitted); *see also Turner*, 476 F.3d at 345; *Septimus*, 399 F.3d at 609. "Although intermediate evidentiary burdens shift back

---

[2] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Thus, the plaintiff "can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that race was a determinative factor in the actions of which plaintiff complains." *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (internal citations omitted).

To establish a *prima facie* case of race discrimination under Title VII in accordance with the *McDonnell Douglas* burden-shifting framework, the plaintiff must demonstrate that she: "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (internal quotation marks and citations omitted).

### i.   Shelita Turner

The parties do not dispute that Turner has satisfied the first three elements of her *prima facie* case; Goodwill argues that Turner cannot satisfy the fourth element. The uncontested evidence shows that Turner was replaced by an African-American, and she admits that there was no non-African-American employee similarly situated to her who was treated more favorably. Instead, citing to an inapplicable Age Discrimination in Employment Act case, Turner argues that she can establish the fourth element of her *prima facie* case by demonstrating that she was

"otherwise discharged because of" her race, *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003). Turner then goes headlong into a discussion of the various ways to demonstrate pretext and, without pointing to any evidence in the record, makes assertions in an attempt to show as much.

Turner has offered no direct evidence of discrimination. Therefore, she must proceed under the burden-shifting framework of *McDonnell Douglas*. *Alvarado*, 492 F.3d at 611. The elements necessary to establish a *prima facie* case of discrimination under that framework are well-settled. Turner admittedly cannot satisfy the fourth element. Accordingly, Goodwill is entitled to summary judgment on her discrimination claim.

### ii.  Jennifer Jacobs

The Court grants Goodwill summary judgment on Jacobs' discrimination claim. Her claim fails for the same reason Turner's claim failed—she cannot establish the fourth element of her *prima facie* case. Jacobs does not dispute the fact that she was not replaced and concedes that there was no employee similarly situated to her. Because Jacobs has presented no direct evidence of discrimination, nor can she cannot establish a *prima facie* case of discrimination under *McDonnell Douglas*, her claim necessarily fails.

### iii.  Aya Tiacoh

Goodwill admits that Tiacoh has satisfied the first two elements of her *prima facie* case. The parties dispute whether the reduction of Tiacoh's hours from forty to twenty per week and her subsequent resignation constitute constructive discharge. There is also disagreement as to whether Tiacoh can establish the fourth element of her claim. However, even if she is able to do so, Goodwill argues that she cannot demonstrate pretext.

A resignation is actionable under Title VII only if it qualifies as a constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). To establish constructive discharge, the plaintiff must show "that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* (quoting *Faruki v. Parsons*, 123 F.3d 35, 319 (5th Cir. 1997)). To determine whether a reasonable employee would feel compelled to resigned, courts must consider whether the following events occurred:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 440 (5th Cir. 2005) (quoting *Kinney Shoe*, 237 F.3d at 566) (alteration in original) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)). "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." *Kinney Shoe*, 237 F.3d at 566 (citing *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429–30 (5th Cir. 1992), *aff'd* 511 U.S. 244 (1994)).

Tiacoh claims she felt compelled to resign for two reasons: (1) her effective salary was reduced, and (2) she was being harassed by Berry. Although Tiacoh's hours were cut in half, her hourly wage remained the same. And even though she claims she was harassed, she admits that Berry displayed the same attitude to all the employees she supervised, including the only non-African-American employee.

Tiacoh does not stand in the same shoes as the plaintiff in *Miller v. Butcher Distributors*, who was a full-time employee before she was given the ultimatum by her boss, "It's either part time, or you're out of here." 89 F.3d 265, 267 (5th Cir. 1996). Nor is her situation as unpalatable

as the plaintiff's in *Guthrie v. Tifco Industries*, who was demoted twice, had his salary reduced by forty percent, and was assigned to work for a younger colleague with less experience. 941 F.2d 374, 377 (5th Cir. 1991).[3] Construing all facts and inferences in the light most favorable to Tiacoh, the Court finds the evidence she cites insufficient to support her claim of constructive discharge.[4]

### B.    Retaliation

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against" an employee for opposing an unlawful practice or asserting a charge, testifying, assisting, or participating in a Title VII proceeding or investigation. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (citing 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* claim of retaliation under Title VII, the plaintiff must show that: "(1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner*, 476 F.3d at 348 (citing *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003)). "The burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in [*McDonnell Douglas*], is applicable to Title VII unlawful retaliation cases." *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000).

### i.    Shelita Turner

The parties do not dispute that the first two elements of Turner's *prima facie* case are satisfied; rather, they disagree on whether Turner has established a causal connection between

---

[3] The Court points out that the Fifth Circuit, even after assuming *arguendo* that Guthrie was constructively discharged, noted that the circumstances surrounding his demotion were not "outrageous" and only amounted to a "very minimal showing." 941 F.2d at 377 (internal quotations omitted).

[4] Having found that Tiacoh cannot establish a *prima facie* case of discrimination, the Court does not discuss the issue of pretext. However, the Court notes that the submissions of the parties clearly demonstrate that Goodwill had legitimate, nondiscriminatory reasons for reducing Tiacoh's work hours (grant constraints), and Tiacoh has pointed to no evidence that creates a genuine fact issue as to whether Goodwill's proffered reason for the reduction is pretextual.

the protected activity and her termination. Turner argues that a causal link exists between the filing of her grievance and her termination because the events occurred a mere thirty-nine days apart.

The Court agrees with Turner. It is clear that "temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The Court finds that thirty-nine days satisfies the "very close" requirement. *See Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (finding time span of "roughly two and a half months" sufficient to infer causation during *prima facie* case).

Although Turner has established a *prima facie* case of retaliation, Goodwill has articulated a legitimate, non-retaliatory reason for her termination: namely, her failure to report to work for several days without calling her supervisor which constituted job abandonment under Goodwill policy. Therefore, Turner must adduce evidence that this reason is "actually a pretext for retaliation." *LeMaire v. Louisiana*, 480 F.3d 383, 389 (5th Cir. 2007) (internal citation omitted).

Turner can establish pretext by showing that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 133 S.Ct. 2517, 2533 (2013). "In order to avoid summary judgment, [she] must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Coleman v. Jason Pharm.*, 540 F. App'x 302, 304 (5th Cir. 2013) (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)).

Turner attempts to establish pretext in three ways: (1) by claiming that Goodwill's decision turned on Berry's subjective assessment of her; (2) temporal proximity; and (3) Goodwill not adhering to its own grievance policy with respect to her complaint. All three avenues fail.

First, Goodwill's stated reason for terminating Turner was not based on a subjective assessment; it was because Turner's actions constituted job abandonment under organizational policy. Second, "temporal proximity alone is insufficient to prove but for causation." *Strong*, 482 F.3d at 808 (citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992)). Third, Goodwill did not violate its grievance policy. Contrary to Turner's assertion, Goodwill's policy only provides for a three-member committee to hear appeals from the decision of a district manager. Turner never filed a complaint with her district manager. Moreover, it is well-settled that "[a] defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that that plaintiff was treated differently than other non-minority employees." *Turner*, 476 F.3d at 346 (quoting *Upshaw v. Dallas Heart Grp.*, 961 F.Supp 997, 1002 (N.D. Tex. 1997)). Even if Goodwill had violated its policy, that standing alone (as would be the case here) is not sufficient to establish pretext.

Because Turner has failed to establish a conflict in substantial evidence on the issue of but for causation, the Court finds summary judgment on her retaliation claim to be proper.

###   ii.   Jennifer Jacobs

Goodwill maintain that Jacobs cannot establish the third element of her *prima facie* case. To establish causality, Jacobs relies solely on temporal proximity—she was terminated within months of being identified as a witness for Turner in her claim of discrimination by Berry. Although it is not apparent from the record when Jacobs was identified as a witness or

interviewed by Solis, it is clear that it was on or before May 26, 2010, the day Solis circulated his investigative findings. Jacobs was terminated on September 10, 2010, at least three and a half months later. The Court holds that three and a half months does not constitute "very close" such that causation can be demonstrated by temporal proximity alone.[5]

### iii.    Aya Tiacoh

The parties dispute whether Tiacoh can establish the third element of her *prima facie* case. She relies solely on temporal proximity to demonstrate causality. Her hours were reduced within eleven weeks of being identified as a witness for Turner in her claim of discrimination. As with Jacobs, it is not clear when Tiacoh was identified as a witness or interviewed by Solis, but it must have been on or before May 26, 2010, the day Solis circulated his investigative findings. She was notified of the reduction in her hours on August 3, 2010. Because the events occurred "roughly two and a half months" apart, the Court is of the opinion that causation can be inferred. *Richard*, 233 F. App'x at 338.

Nevertheless, Goodwill is entitled to summary judgment on Tiacoh's retaliation claim because it has articulated a legitimate, non-retaliatory reason for reducing her hours—a lack of funding—and she has not pointed to any evidence in the record substantiating her assertion that the reduction would not have occurred but for her participation in protected activity.

### C.    *Sabine Pilot*

In Texas, the general rule is that at-will employment may be terminated by the employer or the employee "for good cause, bad cause, or no cause at all." *Cnty. of Dallas v. Wiland*, 216

---

[5] The Fifth Circuit has relied upon decisions from district courts in the circuit that found a time lapse of up to four months sufficient to satisfy the causal link requirement. *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). However, the court has since observed that subsequent to *Evans*, the Supreme Court approvingly "acknowledged other circuit court decisions that found three and four month periods too long to allow for an inference of causation." *Richard*, 233 F. App'x at 338 n.2 (citing *Breeden*, 532 U.S. at 273-74). Based on that observation, this Court believes that the Fifth Circuit would not deem a time period of three months or longer to be sufficiently close.

S.W.3d 344, 347 (Tex. 2007). There is a narrow exception to this rule, however, whereby an employee can bring suit for wrongful termination when she is discharged "for the sole reason that [she] refused to perform an illegal act." *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).

"In order to establish a *prima facie* case of wrongful termination under *Sabine Pilot*, the plaintiff must prove that: (1) she was required to commit an illegal act which carries criminal penalities; (2) she refused to engage in the illegality; (3) she was discharged; (4) the sole reason for her discharge was her refusal to commit an unlawful act." *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (citing *Sabine Pilot*, 687 S.W.2d at 735; *Burt v. City of Burkburnett*, 800 S.W.2d 625, 626-27 (Tex.App.-Fort Worth 1990, writ denied)).

### i.    Shelita Turner

Turner's *Sabine Pilot* claim fails. She has adduced nothing that demonstrates that the "sole reason for her discharge was her refusal to commit an unlawful act." *Sabine Pilot*, 687 S.W.2d at 735. "An employer who discharges an employee both for refusing to perform an illegal act *and* for a legitimate reason or reasons cannot be liable for wrongful discharge." *Eichmann v. Ritz-Carlton Hotel Co.*, 1996 WL 481181, at *1 (5th Cir. 1996) (emphasis in original) (quoting *Tex. Dep't of Human Servs. of State of Tex. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995)). The summary judgment evidence in this case reflects that Turner had a history of tardiness and absenteeism and was ultimately terminated because she abandoned her job. Rather than identify any evidence in the record that supports the notion that she was fired because of her refusal to perform an illegal act, Turner instead relies on conclusory allegations and unsubstantiated assertions. This is not enough to defeat summary judgment.

### ii.    Jennifer Jacobs

The Court finds that Jacobs' wrongful discharge claim also fails. In her deposition, Jacobs admitted "there were several reasons" she was terminated. Docket No. 49, Ex. 5, Jacobs Dep. 153:5. "By her own testimony, [Jacobs] cannot prove that she was terminated for the sole reason that she refused to perform an illegal act." *Eichmann*, 1996 WL 481181, at *1. Consequently, Jacobs' *Sabine Pilot* claim fails as a matter of law. *Id.*

### iii.    Aya Tiacoh

Tiacoh's wrongful discharge claim fails because the uncontroverted evidence demonstrates that Goodwill had at least one reason to reduce her hours that was wholly unrelated to her claimed refusal to perform an illegal act.

## VI.    CONCLUSION

For the foregoing reasons, the Court GRANTS Goodwill's motions for summary judgment in their entirety.

**IT IS SO ORDERED**.

SIGNED on this 17th day of July, 2014.

Kenneth M. Hoyt
United States District Judge